UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NADIIA ZHULINSKA and ILONA SKALA, <br><br> Plaintiffs, <br><br> -against- <br><br> NIYAZOV LAW GROUP, P.C., and AGA LEGAL STAFFING INC., and ARIEL NIYAZOV, individually, and GARY VAINER, individually, <br><br> Defendants. | **COMPLAINT** <br><br> **Docket No.:** <br><br> <u>Jury Trial Demanded</u> |

NADIIA ZHULINSKA and ILONA SKALA (collectively as "Plaintiffs"), by and through their attorneys, STEVENSON MARINO LLP, as and for their Complaint against NIYAZOV LAW GROUP, P.C. ("Niyazov Law"), and ARIEL NIYAZOV, individually, and GARY VAINER, individually (collectively as the "Law Firm"), and AGA LEGAL STAFFING INC. ("AGA Legal," and together with the Law Firm as "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

**NATURE OF THE CASE**

1.     This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the anti-gender discrimination provisions of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); (ii) the anti-gender discrimination provisions of the New York City Human Rights Law ("NYCHRL"); (iii) the anti-retaliation provisions of Title VII; (iv) the anti-retaliation provisions of the NYCHRL; (v) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

1

§ 207(a); (vi) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160, N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2; (vii) the minimum wage provisions of the NYLL § 652(1), N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.1; (viii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (ix) the NYLL's requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, NYLL § 195(1); and (x) any other claim(s) that can be inferred from the facts set forth herein.

2.      As described below, Plaintiffs are two former female employees that were jointly employed by Defendants. The Law Firm was run by the managing attorney, Niyazov, and his non-attorney partner and office manager, Vainer. During Plaintiffs' respective employment periods, Niyazov and Vainer subjected them to deplorable and deviant acts of unwanted sexual touching, sexual abuse, and a hostile and sexually predatory work environment. Indeed, Niyazov and Vainer used their authority over these women to create a power dynamic that resulted in repeated acts by Vainer to coerce the Plaintiffs into non-consensual sexual acts both in the office and outside the office during work-related events that naturally spilled into the workplace to interfere with Plaintiffs' work environment. While Niyazov knew of the prurient conduct of Vainer, Niyazov did nothing to stop the conduct of his partner and effectively condoned the activity so as to turn the Law Firm into a "hunting ground," according to one Law Firm employee.

3.      Additionally, after Skala made a post-employment protected complaint to Niyazov and Vainer opposing sexual harassment, Vainer retaliated against Skala by contacting Skala's new employer in an attempt to get her fired.

4.      Lastly, Defendants failed to: (1) pay Plaintiffs overtime under the FLSA and the NYLL; (2) pay Plaintiffs minimum wage under the NYLL; (3) provide Plaintiffs with accurate wage statements under the NYLL; and (4) provide Plaintiffs with a wage notice upon hire under the NYLL.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      On December 9, 2020, Zhulinska filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge No.: 520-2020-0905.

6.      On December 9, 2020, Skala filed a Charge with the EEOC, which was assigned EEOC Charge No.: 520-2020-0964.

7.      Thereafter, on January 15, 2021, at Plaintiffs' request, the EEOC issued Notices of Right to Sue ("Notice") for both Plaintiffs, which Plaintiffs received on January 19, 2021.

8.      Plaintiffs have timely filed this Complaint within ninety days of receiving the Notices.

## JURISDICTION AND VENUE

9.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

10.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

11.     At all relevant times herein, Plaintiffs worked for Defendants in New York, and were "employees" entitled to protection as defined by Title VII, the FLSA, the NYCHRL, and the NYLL.

12.     At all relevant times herein, Niyazov Law was and is a New York corporation with its principal place of business located at 66-22 99th Street, Rego Park, New York 11374.

13.     At all relevant times herein, AGA Legal was and is a New York corporation with its principal place of business located at 2663 Coney Island Avenue, 2FL, Brooklyn, New York 11223.

14.     At all relevant times herein, Defendant Niyazov was and is Niyazov Law's Managing Partner and sole owner. In this role, Defendant Niyazov oversaw Niyazov Law's operations, paid employees, and had the power to hire and fire and approve all personnel decisions with respect to all of Niyazov Law's employees. Defendant Niyazov supervised all of Plaintiffs' day-to-day activities and played a role in the hiring and firing of Plaintiffs.

15.     At all relevant times herein, Defendant Vainer was and is Niyazov Law's office manager. In this role, Defendant Vainer was responsible for supervising employees and had the power to hire and fire and approve all personnel decisions with respect to all of Niyazov Law's employees. Defendant Vainer specifically negotiated wages with Plaintiffs, directed them to perform tasks on behalf of Niyazov Law and made the decision to hire and fire of Plaintiffs, with Niyazov's approval.

16.     At all relevant times herein, Defendants jointly employed at least fifteen employees and are, thus, "employers" within the meaning of Title VII and the NYCHRL.

17.     At all relevant times herein, Defendants were and are jointly Plaintiffs' "employers" within the meaning of the FLSA and NYLL. Additionally, Defendants' qualifying annual business exceeded and exceeds $500,000.00, for all relevant years, and Defendants were and are engaged in interstate commerce within the meaning of the FLSA, as Defendants employ two or more employees and conduct business through their law practice in states other than New York, purchase office supplies and furniture in the course of their business that originates from states other than New York, as well as accept credit card payments from clients for payment of their services, the combination of which subjects Defendants to the FLSA's requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on their own behalf, as well as on behalf of those in the following collective:

> Current and former legal assistants, who at any time during the applicable FLSA limitations period, performed any work for Defendants in New York and who consent to file a claim to recover damages for overtime compensation and liquidated damages that are legally due to them ("FLSA Plaintiffs").

19.     Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

20.     At all relevant times, Defendants are and have been aware of the requirements to

pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

21.    Thus, Plaintiffs and all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully failing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## BACKGROUND FACTS

22.    Niyazov Law is a law firm that practices mainly personal injury law in the state of New York, with offices in Brooklyn and Queens, with its main office located at 66-22 99th Street, Rego Park, New York 11374.

23.    AGA Legal is a staffing firm that maintained Plaintiffs' employment records and paid Plaintiffs their weekly wages.

### NADIIA ZHULINSKA

24.    On November 13, 2019, Niyazov Law hired Zhulinska as a legal assistant through AGA Legal. Specifically, Vainer hired Zhulinska with the approval of the managing attorney, Niyazov. Vainer represented to Zhulinska that he owned the law office with Niyazov, although Vainer is not an attorney. When Vainer hired Zhulinska, he was aware that she was suffering from depression due to her ongoing financial difficulties.

25.    During her employment, Zhulinska performed work exclusively for the Law Firm, including answering phones, scanning and shredding files, maintaining and organizing financial documents such as loans and liens, processing intake files and arranging the clients' case files, coordinating with medical offices to obtain medical records and insurance companies for the Law Firm's clients, and speaking with the Law Firm's clients about their cases. On occasion, at the

direction of Niyazov, Zhulinska performed work for the two other attorneys that shared the office space.

26.     Niyazov specifically provided Zhulinska with her daily tasks and supervised her work for the Law Firm.

27.     On her first day, November 13, 2019, Vainer invited Zhulinska to dinner after work. Vainer, who was with friends, told Zhulinska that other Law Firm employees would be joining. When they arrived at the restaurant, no other Law Firm employees were present. During the dinner, Vainer proceeded to become inebriated. Vainer also became discouraged with Zhulinska's professional demeanor during the dinner and asked her, "why are you so disinterested?"

28.     Following dinner, Vainer insisted that Zhulinska follow him outside so that he could smoke a cigarette.  When they were outside, Vainer asked Zhulinska to follow him several times and continued to ask her why she looked so sad, what had happened to her, and what kind of difficulties she experienced. Vainer deliberately positioned himself as a person with power who could help her and someone with whom she could reply upon. Despite Zhulinska saying that she was capable of resolving her own issues and simply needed a job, Vainer continued repeating that he was going to resolve her problems.

29.     Around 9:00 p.m., Vainer asked Zhulinska to go back to Zhulinska's apartment because he had something work-related that he needed to discuss with her. When she declined, Vainer requested that she accompany him to the office, which she obliged.

30.     At the office, there were no employees present, as everyone had left for the day. Vainer attempted to talk with Zhulinska about her personal problems, which he knew included money issues. Vainer offered to write her a check for $15,000.00, but Zhulinska declined to accept

any money from Vainer other than the wages that they had agreed upon for her work for the Law Firm.

31.     Disturbingly, as they were sitting in chairs across from each other, Vainer then started unzipping his pants. Shocked, Zhulinska told him to zip up his fly and immediately got up from her chair and left the office.  She did not know what to do next, as Vainer was intoxicated and she needed a job. Suddenly, Vainer abruptly invaded her personal space and kissed her. Zhulinska immediately pushed him away and ran out of the office. Approximately fifteen minutes later, Vainer called her demanding her to return back to the office. After she refused, Vainer threatened that if she failed to come to return to work the next day by 9:00 a.m. precisely, the Law Firm would terminate her. Zhulinska returned the next day and Vainer pretended as if nothing had happened.

32.     On, November 20, 2019, near the end of the workday, Vainer offered alcohol to Zhulinska (Vainer commonly did this throughout Zhulinska's employment) and the Law Firm's office manager, Melanie. Zhulinska and Melanie both agreed to have a drink in the office. After Melanie, left the office, Vainer unexpectedly moved toward Zhulinska and kissed her without any notice. Vainer next lifted Zhulinska's skirt over her underwear and picked her up to place her on a desk. Vainer then removed Zhulinska's underwear, removed his own pants, and engaged in sexual intercourse with Zhulinska. Following intercourse, Vainer again approached Zhulinska and, this time, forcefully took Zhulinska by the back of the head, holding her hair tight, brought her head down to his penis, and forced her to give him oral sex.

33.     Following this sexual encounter, which devastated Zhulinska and caused her deep shame and depression, she contemplated leaving her employment at the firm. Ultimately, she declined to leave because Defendants had failed to pay her any wages at this point, and she was in

dire financial straits.  Accordingly, Zhulinska decided to attempt to move on from the incident and avoid any interaction with Vainer when not in the presence of others.

34.     On or around December 10, 2019, Zhulinska complained that Vainer had still not paid her despite working at the Law Firm for nearly a month. Vainer agreed at that point to do so, but after Vainer handed the paycheck to Zhulinska, she looked at the amount and disputed that it contained the wages that he promised to pay her. Clearly as a ploy, Vainer asked her to speak with him about it after work hours.

35.     When Zhulinska met Vainer after work hours to discuss the wages, there were no longer any other employees in the office. After Vainer initially attempted to negotiate Zhulinska's wages with her, he then unexpectedly and suddenly moved towards her and kissed her. Vainer next grabbed the back of her head by the hair, and again forced her to give him oral sex.

36.     Following this unwanted occurrence, Zhulinska refused Vainer's requests to meet him after work. Near the end of December 2019, Zhulinska informed Vainer about her decision to seek employment elsewhere. She tried to keep all interactions with Vainer related to work only. In late December 2019, Zhulinska observed Vainer place his hand inappropriately on the hip/waist of another female employee. After this same employee, Ilona Scala, left the job suddenly on or about December 24, 2019, Niyazov and Vainer offered Zhulinska a new salary to stay. Niyazov and Vainer additionally talked to her into staying on the basis that they had "big" business plans that included her. Without any other options and in need of employment, Zhulinska agreed to continue working at the Law Firm.

37.     On February 13, 2020, Vainer asked Zhulinska to stay late to complete work that Vainer told her that he needed immediately. Although Zhulinska agreed to do so, Zhulinska

avoided any personal interaction with Vainer and left promptly after her work was completed. Zhulinska refusing to submit to Vainer made him angry, which he made known the very next day.

38. The next day, on February 14, 2020, Vainer brought in flowers for all the female employees. During the day, making clear to Zhulinska the power dynamic that he possessed over her, Vainer started berating Zhulinska in front of her co-workers. Vainer disrespected and embarrassed her by angrily calling her stupid and, at one point, repeatedly asked her, "do you know where you work?" Zhulinska immediately felt helpless and attacked based on Vainer's previous sexual dominance and coercion over her. This tirade of abusive language motivated by Zhulinska's gender and a direct result of the hostile work environment created by Vainer caused Zhulinska to fear for her safety and well-being. As a result, Zhulinska ended her employment on this day and never returned to the office.

39. Throughout her employment, Zhulinska worked from 9:00 a.m. until 6:00 p.m. each day, but Defendants commonly did not permit her to take an uninterrupted break. Additionally, the Law Firm often required her to begin work earlier than 9:00 a.m. and work as late as 6:30 p.m. and sometimes as late as 8:00 p.m. Thus, the Law Firm required Zhulinska to work between forty-five and fifty hours each week for the duration of her employment.

40. For her work, Defendants paid Zhulinska $16.00 per hour for forty hours worked each week, which resulted in a weekly payment of $640.00. Based on the foregoing, Defendants failed to pay Zhulinska at the applicable NYLL *minimum* wage rate and additionally failed to pay her at one and one-half times her hourly rate for all hours worked over forty each week.

41. By way of example only, for five days during the week of January 6 to January 12, 2020, Zhulinska worked Monday through Friday, commencing her work each day at approximately 9:00 a.m. and working until approximately 6:00 p.m. each day without any

uninterrupted meal break. For her work during this specific workweek, Defendants paid Zhulinska for $640.00 intended to cover only Zhulinska's first forty hours worked. Thus, Defendants actually paid Zhulinska at $14.22 per hour for her hours worked, which fell below the New York minimum wage rate of $15.00 per hour. Defendants additionally failed to pay Zhulinska at the statutorily required overtime rate for the five (5) hours that Zhulinska worked in excess of forty that week. The foregoing example is representative of Zhulinska's hours and compensation throughout her employment with Defendants.

42.     Furthermore, on each occasion when Defendants paid Zhulinska, Defendants failed to provide her with a wage statement that accurately listed Zhulinska's actual hours worked, regular rate of pay, or overtime rate of pay for that week.

43.     Additionally, Defendants failed to provide Zhulinska with any wage notice at her time of hire, let alone one that accurately listed, *inter alia*, the applicable regular or overtime rates of pay.

**ILONA SKALA**

44.     On April 4, 2019, Niyazov Law hired Skala as a legal assistant through AGA Legal. Specifically, Vainer hired Skala with the approval of the managing attorney, Niyazov. Vainer represented to Skala that he owned the office, although Vainer is not an attorney.

45.     During her employment, Skala performed work exclusively for the Law Firm, including answering phones, coordinating with medical offices to obtain medical records for the Law Firm's clients, and speaking with the Law Firm's Russian and Georgian clients about case updates. On occasion, at the direction of Niyazov, Zhulinska performed work for the two other attorneys that shared the office space.

46.     Niyazov specifically provided Skala with her daily tasks and supervised her work for the Law Firm.

47.     On April 8, 2019, Vainer invited Skala to dinner after work, which according to Vainer was to introduce her to the owner (hereinafter, the "Individual") of one of the offices that the Law Firm worked with in the medical industry. Vainer told Skala that she would be responsible for working with the Individual as part of her job at Niyazov Law. This Individual, curiously, never showed up. As a result, the dinner ended up being attended only by Vainer and Skala, at which point Vainer proceeded to become intoxicated and made sexual passes at Skala. Outside of the restaurant, Vainer continued to make sexual advances towards Skala by moving in close to her, putting his hands on her waist, and making several attempts to kiss her. Skala, completely disgusted by Vainer's unwanted touching, rebuffed his advances and lied to him that she had a boyfriend.

48.     On April 23, 2019, Vainer called Skala early in the morning and told her that he was sending a car for her because he needed her "assistance." Vainer did not provide any further information as to what type of "assistance" was needed. As it turns out, Vainer directed the car to take Skala to a sauna, where Vainer was eagerly waiting for her and wearing nothing but a small towel around his waist. Upon greeting Skala, Vainer directed Skala to change from her work attire (as she dressed in formal business attire, incorrectly assuming Vainer requested her assistance for a legitimate work-related function) into a towel because he "needed" her presence at the sauna for the day. Skala refused to go into the sauna and instead told Vainer she would meet him in the dining area. Vainer then directed Skala to come outside with him because he wanted to smoke a cigarette. Outside, Vainer sat uncomfortably close to Skala and again made unwanted sexual advances. Vainer's unlawful sexual advances included placing his hand on Skala's leg and then proceeding to stroke her thigh. Repulsed, outraged, and frightened, Skala promptly removed his

hand and went inside to the dining area (where Vainer's advances would be less likely to occur in the presence of third parties).

49.     On May 29, 2019, Vainer requested that Skala accompany him to meet Barry, an attorney who worked in Manhattan. Unbeknownst to Skala, the meeting with Barry was at a cigar bar. At the bar, Vainer began to drink heavily and became intoxicated. At the conclusion of the "meeting," Vainer called for an Uber to return him and Skala to Brooklyn. In the Uber, Vainer moved to the middle of the back seat and put his head on her lap. Vainer then began to stroke Skala's knees, which repulsed Skala and caused her to move away from him and closer to the window. Vainer then moved Skala, grabbed her neck with his left hand while putting his right hand on her legs and tried to kiss her. Skala, now pressed against the window, pushed Vainer away as he attempted to grab her hands.

50.     On June 8, 2019, Vainer's unlawful sexual conduct towards Skala spilled into the office. Vainer began asking Skala about the boyfriend that she previously said existed (in an effort to deter Vainer's advances). Skala responded that she broke up with the previous boyfriend and met someone new. Vainer then started making lewd comments in front of the entire office about Skala being overly promiscuous and of ill repute. Specifically, Vainer, outrageously, slandered Skala by stating that she "*loves dicks so much*," that she was "*changing dicks too often*," and that she had a sex addiction because she "*could not live without sex*." Vainer did not stop there, in front of her coworkers, Vainer began intimidating and verbally berating Skala by stating, among other things: "*why she bothers buying bras when she does not have any breasts*."

51.     Shortly after this incident, co-workers informed Skala that the Law Firm and Vainer had been recently sued for sexual harassment by a former employee, Marbella Santos. Her co-workers also warned Skala that Vainer had earned the nickname "Dirty Gary."

52.     On October 2, 2019, Vainer told Skala that he needed to meet with her. Vainer requested Skala bring the Law Firm's list of personal injury clients that had undergone surgery following their accidents. Vainer arranged for a car to pick Skala up. Unbeknownst to Skala, the car brought her to another sauna. Vainer, again, appeared naked only with a small towel around his waist. He then directed Skala to change out of her work attire into a towel, which she refused. Horrified, Skala, was forced to sit with a half-naked Vainer in the dining area.

53.     On November 15, 2019, the Law Firm approved for Skala to travel to Ukraine for medical reasons. On December 8, 2019, Skala returned to find that a recently hired female employee now sat at her desk. Skala confronted Vainer about the new hire, and he told her to share the desk with the new employee.

54.     On December 24, 2019, while she was in the office, a co-worker approached Skala to inform her that Vainer was irate at her because she was "doing nothing." Skala then immediately called Vainer directly, and during their call, Vainer told Skala that he was "tired of her" and ended the call by telling her to "go home." Skala then went into Niyazov's office to complain that she was being wrongfully terminated after both: (1) she would not acquiesce to Vainer's sexual demands; and (2) as a result of taking medical leave. She further complained that Niyazov was aware of Vainer's disturbing treatment towards women in the office, to which Niyazov lied by responding that he knew nothing of this alleged conduct. Rather than taking any action to appropriately investigate Skala's claims of a pervasive hostile work environment predicated on Vainer's sexual harassment, which under the law Niyazov was required to do, he simply told her that she would be paid everything that she was owed and that her employment at Niyazov Law had ended.

55.     Following her employment, Skala learned that from employees that work or worked for the Law Firm were aware of Vainer's sexually predatory nature and that the Law Firm tolerated and fostered a pervasive hostile work environment predicated on sexual harassment. One of the Law Firm's employees, Thanisa Perez, described the Law Firm as "a hunting ground." She added, "[I]t's really disgusting." The office manager, Melanie, referring to new hires by the Law Firm, stated that she "think[s] Gary just hires these people so they could be thankful and he could lure them into having sex w him."

56.     Skala received information that on or around September 14, 2020, another female employee of the Law Firm, Ms. Carter, emailed Niyazov complaining of non-payment and sexual assault by Vainer. Ms. Carter specifically stated: "I've been waiting months for my check and this is after Gary assaulted me. Does he want me to sue him or what??????"

57.     On October 20, 2020, Skala, through her counsel, sent correspondence to the Law Firm alleging the foregoing conduct and complaining about sexual harassment and disability discrimination under Title VII and the NYCHRL. Shortly thereafter, the Law Firm's counsel contacted Skala's counsel.

58.     On October 27, 2020, Vainer, contacted Skala's current employer multiple times and then subsequently met with them to discuss Skala's letter complaining of sexual harassment. As a direct result of her complaint of discrimination, in an act of retaliation designed to dissuade Skala from taking any action against him and the Law Firm, Vainer told her current employer to "shut her up" because she is a "liar" and attempted to convince them to terminate her employment. Skala's current employer subsequently relayed this information to her, which caused her to become worried that Vainer's actions would result in her termination.

59.     Throughout her employment, Skala worked from approximately 9:00 a.m. until 6:00 p.m. each day, often without an uninterrupted work break. Additionally, on some occasions, Skala started her work as early as 8:45 a.m. and worked as late as 6:30 p.m. Thus, the Law Firm required Skala to work approximately forty-five to fifty hours each week for the duration of her employment.

60.     For her work, Defendants paid Skala $500.00 per week regardless of the amount of hours that Skala actually worked. Based on the foregoing, Defendants failed to pay Skala at the applicable NYLL *minimum* wage rate and additionally failed to pay her at one and one-half times her hourly rate for all hours worked over forty.

61.     By way of example only, for five days during the week of December 16 to December 22, 2019, Skala worked Monday through Friday, commencing her work each day at approximately 9:00 a.m. and working until approximately 6:30 p.m. each day without any uninterrupted meal break. For her work during this specific workweek, Defendants paid Skala $500.00 intended to cover only Skala's first forty hours worked. Thus, Defendants actually paid Zhulinska at $10.53 per hour for her hours worked, which fell below the New York minimum wage rate of $15.00 per hour. Defendants additionally failed to pay Skala at the statutorily required overtime rate for the seven and one-half (7.5) hours that Skala worked in excess of forty that week. The foregoing example is representative of Skala's hours and compensation throughout her employment with Defendants.

62.     Furthermore, on each occasion when Defendants paid Skala, Defendants failed to provide Skala with a wage statement that accurately listed Skala's actual hours worked, regular rate of pay, or overtime rate of pay for that week.

63.     Additionally, Defendants failed to provide Skala with any wage notice at her time of hire, let alone one that accurately listed, *inter alia*, the applicable regular or overtime rates of pay.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Gender Discrimination and Harassment in Violation of the Title VII*

64.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65.     Title VII prohibits employers from failing or refusing to hire or to discharge any individual, or otherwise discriminate against an individual with respect to the individual's compensation, terms, conditions, or privileges of employment, and/or limiting, segregating, or classifying employees in any way which deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the employee's status as an employee, because of an individual's sex.

66.     As described above, Defendants are employers within the meaning of Title VII, while Plaintiffs are employees within the meaning of Title VII.

67.     As also described above, Defendants discriminated against Plaintiffs by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiffs based on their gender, subjecting Plaintiffs to quid pro quo sexual propositions in exchange for benefits of employment, and by terminating or constructively terminating Plaintiffs on the basis of their sex, in violation of Title VII.

68.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

17

69.     As a direct and proximate result of Defendants unlawful discriminatory conduct in violation of Title VII, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

70.     Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiffs are entitled to an award of punitive damages.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Gender Discrimination in Violation of the NYCHRL*

71.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

72.     NYCHRL § 8-107 prohibits employers, because of an employee's gender, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

73.     As described above, Defendants discriminated against Plaintiffs by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiffs based on their gender, subjecting Plaintiffs to quid pro quo sexual propositions in exchange for benefits of employment, and by terminating or constructively terminating Plaintiffs on the basis of their sex, in violation of the NYCHRL.

74.     As described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiffs are employees within the meaning of the NYCHRL.

75.     As also described above, Defendants discriminated against Plaintiffs on the basis of their gender in violation of the NYCHRL.

76.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

77.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT LAW FIRM
*Retaliation in Violation of Title VII*

78.     Plaintiff Skala repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

79.     Title VII prohibits employers from discriminating against an employee because the employee has in good faith opposed any practice made an unlawful employment practice under Title VII.

80.     As described above, Defendant Law Firm are employers within the meaning of Title VII, while Plaintiff Skala is an employee within the meaning of Title VII.

81.     As also described above, Defendant Law retaliated against Plaintiff Skala after she asserted a good faith complaint opposing Defendant Law Firm's practices forbidden under Title VII.

82.     As a direct and proximate result of Defendant Law Firm's unlawful retaliatory conduct in violation of Title VII, Plaintiff Skala has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

83.     As a direct and proximate result of Defendant Law Firm's unlawful retaliatory conduct in violation of Title VII, Plaintiff Skala has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

84.     Defendant Law Firm's unlawful retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff Skala is entitled to an award of punitive damages.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT LAW FIRM
### *Retaliation in Violation of the NYCHRL*

85.     Plaintiff Skala repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

86.     NYCHRL § 8-107(7) prohibits an employer from retaliating against an employee who has in good faith opposed any practice forbidden by the NYCHRL.

87.      As described above, Defendant Law Firm are employers within the meaning of the NYCHRL, while Plaintiff Skala is an employee within the meaning of the NYCHRL.

88.     As also described above, after Plaintiff Skala engaged in activity protected under the NYCHRL, Defendant Law Firm retaliated by placing her on a performance improvement plan and ultimately terminating her employment.

89.     As a direct and proximate result of Defendant Law Firm's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff Skala has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

90.     As a direct and proximate result of Defendant Law Firm's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff Skala has suffered, and continues to suffer, severe

mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

91.    Defendant Law Firm's unlawful actions were taken willfully and wantonly, and/or were so negligent and reckless and/or evidenced a conscious disregard of the rights of Plaintiff Skala so that Plaintiff Skala is entitled to an award of punitive damages.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime Under the FLSA*

92.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

93.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

94.    As described above, Defendants are employers within the meaning of the FLSA, while Plaintiffs are employees within the meaning of the FLSA.

95.    As also described above, Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the FLSA's overtime provisions.

96.    Defendants willfully violated the FLSA.

97.    Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

98.    Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime Under the NYLL and the NYCRR*

99.     Plaintiffs, and any Plaintiff that opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

100.    NYLL § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

101.    As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiffs, and any Plaintiff that opts into this action, are employees within the meaning of the NYLL and the NYCRR.

102.    As also described above, Plaintiffs, and any Plaintiff that opts into this action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

103.    Plaintiffs, and any Plaintiff that opts into this action, are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

104.    Plaintiffs, and any Plaintiff that opts into this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's overtime provisions.

**SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Minimum Wages Under the NYLL and the NYCRR*

105.    Plaintiffs, and any Plaintiff that opts into this action, repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

106.    NYLL § 652(1) and NYCRR § 142-2.1 prescribe a minimum wage that employers must pay to their employees for each hour worked.

107.    As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiffs, and any Plaintiff that opts into this action, are employees within the meaning of the NYLL and the NYCRR.

108.    As also described above, Defendants failed to compensate Plaintiffs, and any Plaintiff that opts into this action, at the minimum hourly rate of pay for all hours worked in accordance with the NYLL's and the NYCRR's minimum wage provisions.

109.    At the least, Plaintiffs, and any Plaintiff that opts into this action, are entitled to pay at the minimum wage rate for all hours worked each week.

110.    Plaintiffs, and any Plaintiff that opts into this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and NYCRR's minimum wage provisions.

**EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

111.    Plaintiffs, and any Plaintiff that opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

112.     NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

113.     As described above, Defendants, on each payday, failed to furnish Plaintiffs, and any Plaintiff that opts into this action, with accurate wage statements containing the criteria required under the NYLL.

114.     Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs, and any Plaintiff that opts into this action, in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

## NINTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Notices in Violation of the NYLL*

115.     Plaintiffs, and any Plaintiff that opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

116.     NYLL § 195(1) requires that employers provide employees with wage notices containing accurate, specifically enumerated criteria within ten business days from the time of hire.

117.     As described above, Defendants failed to furnish Plaintiffs, and any Plaintiff that opts into this action, with accurate wage notices at hire containing the criteria required under the NYLL.

118.     Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs, and any Plaintiff that opts into this action, in the amount of $50 for each workday after the violations initially occurred, up to a statutory cap of $5,000.

## DEMAND FOR A JURY TRIAL

119.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and FLSA Plaintiffs demand judgment against Defendants as follows:

a.     A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.     An order granting preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.     An order restraining Defendants from any retaliation against Plaintiffs for participation in any form in this litigation;

d.     An award of damages in an amount to be determined at trial to compensate Plaintiffs for all monetary and/or economic damages in connection with their claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that they would have received but for Defendants' unlawful conduct;

e.     An award of damages to be determined at trial to compensate Plaintiffs for harm to their professional and personal reputations and loss of career fulfillment in connection with their claims;

f.     An award of damages to be determined at trial to compensate Plaintiffs for emotional distress and/or mental anguish in connection with their claims;

g.      An award of punitive damages to the extent permitted by law, commensurate with Defendants' ability to pay;

h.      Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing a form consenting to join the lawsuit pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

i.      All damages that Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiffs would have received but for Defendants' unlawful payment practices;

j.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

k.      An award to Plaintiffs of their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

l.      An award of pre-judgment and post-judgment interest, as provided by law; and

m.      Designation of Plaintiffs and Plaintiffs' counsel as collective action representatives under the FLSA;

n.      Pre-judgment and post-judgment interest, as provided by law; and

o.      Granting Plaintiffs such other and further relief, including equitable relief, as this

Court finds necessary and proper.

Dated:  New York, New York
        March 12, 2021

                                Respectfully submitted,

                                STEVENSON MARINO LLP
                                *Attorneys for Plaintiffs*
                                75 Maiden Lane, Suite 402
                                New York, New York 10038
                                Tel.    (212) 939-7229
                                Fax.    (212) 531-6129


                        By:     _____
                                JEFFREY R. MAGUIRE (JM 4821)