UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
**NADIIA ZHULINSKA and ILONA SKALA,**

                                  **MEMORANDUM**
                                  **AND ORDER**

                 **Plaintiffs,**                        **21-CV-1348 (CBA)**

    **-against-**

**NIYAZOV LAW GROUP, P.C., et al.,**

                 **Defendants.**
------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Currently pending before this Court is a joint request by plaintiffs Nadiia Zhulinska and Ilona Skala (collectively, "plaintiffs") and defendants Niyazov Law Group, P.C. and Ariel Niyazov (collectively, "the Niyazov defendants") that the Court resolve their disputes regarding the selection of search terms and the format for the production of the Niyazov defendants' electronically stored information ("ESI"). See Status Report on parties' meet and confer regarding ESI protocol (Oct. 19, 2021) ("Joint Motion"), Electronic Case Filing Docket Entry ("DE") #51. For the reasons that follow, the Court grants plaintiffs' demands in large part, insofar as the Niyazov defendants must conduct a search of ESI using certain of the additional search terms proposed by plaintiffs, and must produce the resulting ESI in a text-searchable format.

## BACKGROUND

On March 12, 2021, plaintiffs commenced this action alleging, *inter alia*, sexual harassment claims under Title VII of the Civil Rights Act of 1964 and the New York City

Human Rights Law, as well as wage and hour claims under the Fair Labor Standards Act and the New York Labor Law.  See Complaint (Mar. 12, 2021), DE #1.  Plaintiffs have since accepted defendants' offer of judgment resolving solely the wage and hour claims.  See Clerk's Judgment (Oct. 27, 2021), DE #55; Notice of Acceptance (Oct. 25, 2021), DE #54.  Plaintiffs allege that they were jointly employed by defendants, who subjected them to discriminatory sexual harassment, including non-consensual acts committed by defendant Gary Vainer, who they claim was the law firm's "office manager."  See Amended Complaint (Sept. 21, 2021) ¶¶ 2, 69, 75-76, DE #37.

By letter-motion dated October 4, 2021, plaintiffs moved to compel the production of electronic communications from the Niyazov defendants.  See Motion to Compel the Production of Documents (Oct. 4, 2021) ("10/4/21 Motion"), DE #40.  Plaintiffs' motion concerned discovery requests served on the Niyazov defendants on June 28, 2021, to which the Niyazov defendants responded on September 3, 2021.  See Defendants Niyazov Law Group, P.C., and Ariel Niyazov's Response to Plaintiffs' First Request for Production of Documents, DE #40-1.  Plaintiffs sought the production of "electronic mail, communications, and other documents sent intra-office or to third parties . . . that refer or pertain to Plaintiffs during the Relevant Period . . . [or] refer or pertain to the AGA Defendants regarding work performed for Defendants['] legal practice during the Relevant Period."  See id. at 2-3.

At a conference held on October 12, 2021, the Court granted plaintiffs' motion to compel in large part, and directed the Niyazov defendants to "conduct a search for electronic documents and information relevant to plaintiffs' claims of sexual harassment and failure to

pay wages, including information regarding plaintiffs' employment status, from the following custodians [the 'designated custodians']: plaintiff Nadi[i]a Zhulinska, plaintiff Ilona Skala, defendant Ariel Niyazov, defendant Gary Vainer, and plaintiffs' direct supervisor [Melanie Arboleda]."  Minute Entry and Order (Oct. 12, 2021) ("10/12/21 Minute Entry"), DE #48; see Joint Motion at 1.  The Court further directed the parties to confer regarding the selection of search terms to be used and a stipulated ESI protocol, and to file a joint status report by October 15, 2021.  See 10/12/21 Minute Entry.

The parties jointly advise that they are at an impasse as to the search terms to be used and the format in which the resulting ESI must be produced.  See Joint Motion at 1-2.[1]  Specifically, the Niyazov defendants object to the "broad and non-specific" search terms proposed by plaintiffs.  See Joint Motion at 3.  The Niyazov defendants further object to producing responsive emails in a digital, searchable format, as requested by plaintiffs.  See id.

## DISCUSSION

**I. Legal Standards**

Under Rule 26 of the Federal Rules of Civil Procedure (the "FRCP"), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  If the discovery sought is relevant and proportional to the needs of the case, then the objecting party must establish that the request should be denied.  See Thomas v. City of New York, 336 F.R.D. 1, 2 (E.D.N.Y. 2020); N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan,

---

[1] The parties appear to be in agreement that the ESI at issue consists of only email communications.  See Joint Motion at 2-7.

3

Inc., 325 F.R.D. 36, 48 (E.D.N.Y. 2018); Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp., 14-CV-4717 (FB), 2016 WL 2858815, at *3 (E.D.N.Y. May 16, 2016). In other words, "[t]he party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden [or] expense . . . bears the burden of proving the discovery is in fact . . . unduly burdensome and/or expensive." Black Love Resists in the Rust *ex rel.* Soto v. City of Buffalo, 334 F.R.D. 23, 28 (W.D.N.Y. 2019) (quoting Citizens Union of New York v. Attorney General of New York, 269 F.Supp.3d 124, 129 (S.D.N.Y. 2017)). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012).

The FRCP authorizes a party to serve on any other party a request to produce ESI in "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "[C]ollection, review, and production of ESI present[] special challenges and require[] cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI." Beaton v. Verizon New York, Inc., 20-CV-672 (BMC), 2020 WL 6449235, at *4 (E.D.N.Y. Nov. 3, 2020) (quoting Winfield v. City of New York, 15-CV-05236 (LTS) (KHP), 2017 WL 5664852, at *7 (S.D.N.Y. Nov. 27, 2017)). "Thus, courts 'encourage and expect' cooperation among counsel when it comes to crafting search terms." Id. (internal citation omitted).

A party that has been served with a request for ESI is charged with "find[ing] and disclos[ing] all responsive documents or properly set[ting] forth why the documents are being

4

withheld." Merck Eprova AG v. Gnosis S.P.A., No. 07 Civ. 5898(RJS), 2010 WL 1631519, at *4 (S.D.N.Y. Apr. 20, 2010). This obligation to conduct a diligent search requires good faith on the part of the responding party and its attorneys, and mandates that they work together "to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review, and produce responsive documents." Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

As noted above, the parties dispute the appropriate search terms to be used to search the email boxes of the designated custodians. If the information sought is relevant and proportional, the party resisting disclosure of ESI "must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B); see Thomas, 336 F.R.D. at 2; Black Love Resists, 334 F.R.D. at 29. The Court's "broad discretion to manage the discovery process[] include[es] determinations regarding which search terms a party should apply." Hernandez v. NHR Human Res., LLC, 20cv3109 (PGG) (DF), 2021 WL 2535534, at *20 (S.D.N.Y. June 18, 2021) (quoting Beaton, 2020 WL 6449235, at *4); see Emanuel v. Gap, Inc., 19-CV-3617 (PMH), 2020 WL 5995134, at *2-3 (S.D.N.Y. Oct. 9, 2020) (denying appeal of magistrate judge's determinations regarding which search terms to apply); Trusz v. UBS Realty Invs. LLC, No. 3:09 CV 268(DJS), 2011 WL 1628005, at *7-8 (D. Conn. Apr. 27, 2011) (revising parties' disputed list of search terms); Capitol Records, Inc. v. MP3tunes, LLC, 261 F.R.D. 44, 50, 52-53 (S.D.N.Y. 2009) (ruling on use of various search terms). Having considered the parties' respective showings, the Court

5

exercises its broad discretion as follows.

## II. Search Terms

### A. Search No. 1

The Niyazov defendants object on the ground of overbreadth to plaintiffs' proposed search of emails, on 18 specific dates, for plaintiffs' names, or for the terms "legal assistant," "assistant," "paralegal," and "secretary." See Joint Motion at 4. The 18 dates correspond to the timing of "key events" – the commencement or termination of plaintiffs' employment or the alleged sexual misconduct. See id. While it is undisputed that plaintiffs performed services for the law firm as legal assistants, the Niyazov defendants deny that plaintiffs were the firm's "employees," a critical element for Title VII liability. Under Title VII, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005). "[F]actors courts have used to examine whether an entity constitutes a joint employer of an individual include 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision.'" Huan Wang v. Air China Ltd., 17-CV-6662 (MKB) (JO), 2020 WL 1140458, at *5 (E.D.N.Y. Mar. 9, 2020) (quoting Shiflett v. Scores Holdings Co., Inc., 601 F.App'x 28, 30 (2d Cir. 2015)).

Accordingly, the application of plaintiffs' proposed search terms to emails in the accounts of the five designated custodians, occurring on 18 specific dates, may yield ESI that

6

is relevant to their employment status and/or the claimed sexual harassment and thus to the claims and defenses in this case. To the extent that the Niyazov defendants argue that these terms are too generic, their position is inconsistent with other search terms to which they have agreed, e.g., "employee," "dinner," and "restaurant." See Joint Motion at 3 (agreeing to 42 search terms). The search terms "legal assistant," "assistant," "paralegal," and "secretary" are relevant to plaintiffs' employment status and thus to identifying their employer(s).

The Niyazov defendants have failed to sustain their burden of demonstrating that the information sought is not reasonably accessible or that its production would be unduly burdensome. See Maurer v. Sysco Albany, LLC, No. 1:19-CV-821 (TJM/CFH), 2021 WL 2154144, at *9 (N.D.N.Y. May 27, 2021) ("defendants have not set forth arguments or evidence to support" claim that inclusion of search term was overly broad); Thomas, 336 F.R.D. at 3 ("[s]ince Defendants give no indication of the volume of responsive ESI, the Court cannot conclude" that production would be unduly burdensome); Black Love Resists, 334 F.R.D. at 29 (rejecting claim of burden where defendants "have not quantified that burden in terms of the number of documents subject to collection and review or the amount of time and manpower that would be reasonably required to comply with the requests") (internal quotation marks and citation omitted); Capitol Records, 261 F.R.D. at 50 (defendant "has not shown that the production of all of the requested employees' email communications would be unduly burdensome or that a search of their files would not potentially yield relevant information"). In fact, it appears that the Niyazov defendants have not actually performed any searches to

determine how many emails would be captured by various search terms.[2] As a result, their claims of undue burden are merely speculative. Particularly since the temporal scope of the search is limited to 18 specific dates, there is no reason to expect that using these additional search terms would yield an excessive or unduly burdensome number of emails to review. Moreover, as courts have recognized, predictive coding is an efficient and acceptable means of culling relevant responsive documents to be produced from ESI identified through keyword searches. See, e.g., Winfield, 2017 WL 5664852, at *7-8; Livingston v. City of Chicago, No. 16 CV 10156, 2020 WL 5253848 (N.D. Ill. Sept. 3, 2020); see also Moore v. Publicis Groupe, 287 F.R.D. 182, 191 (S.D.N.Y. 2012) ("Computer-assisted review appears to be better than the available alternative[.]"), adopted, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012).

---

[2] The burden anticipated by the Niyazov defendants may be a function of their decision not to retain an experienced ESI vendor but instead to have defendant Niyazov conduct the search, and review each email, himself. See Joint Motion at 2 (plaintiffs recount defendants' statement that they would have "to go through each and every email to discern whether the email was relevant"); id. at 3 (defendants complain that "the hiring of an outside IT vendor by the Defendant Ariel Niyazov . . . would force Mr. Niyazov to incur an expense which is simply not necessary"). "[S]elf-collection" by ESI custodians "is strongly disfavored." Thomas, 336 F.R.D. at 5 (citing Herman v. City of New York, 334 F.R.D. 377, 386 (E.D.N.Y. 2020)). A party that opts not to have an expert conduct the ESI search does so at its peril, as "[s]election of the appropriate search and information retrieval technique requires careful advance planning by persons qualified to design effective search methodology[,]" William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., 256 F.R.D. 134, 135 (S.D.N.Y. 2009) (quoting Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 262 (D. Md. 2008)), and small businesses are not excused from complying with their ESI discovery obligations, see Acosta v. Anchor Frozen Foods Corp., CV 17-6569 (GRB) (AKT), 2020 WL 7078578, at *6 (E.D.N.Y. Nov. 30, 2020). Nor is defense counsel off the hook: "Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search." Richard Green (Fine Paintings), 262 F.R.D. at 290 (internal quotation marks and citation omitted); see Acosta, 2020 WL 7078578, at *6; Alter v. Rocky Point Sch. Dist., 13-1100 (JS) (AKT), 2014 WL 4966119, at *2 (E.D.N.Y. Sept. 30, 2014) (counsel "are responsible for directly overseeing, supervising and reviewing the discovery efforts taken by the clients") (internal quotation marks and citation omitted). "Failing to personally oversee searches for relevant discovery leaves an attorney open to sanctions for inadequately supervising such discovery." Alter, 2014 WL 4966119, at *2 (internal quotation marks and citation omitted).

To the extent the Niyazov defendants object to a search using different permutations or spellings of plaintiffs' names, such a protocol is standard operating procedure for ESI searches and a reasonable method of searching for responsive materials. See, e.g., Maurer, 2021 WL 2154144, at *4-6; William A. Gross Constr. Assocs., 256 F.R.D. at 136 ("Misspelled words may be missed in a keyword search.") (quoting Jay Grenig, Browning Marean & Mary Pat Poteet, Electronic Discovery & Records Management Guide: Rules, Checklists & Forms § 15:15 (2009 ed.)).

B. Search No. 2

The parties dispute whether, for the period from April 4, 2019 to February 14, 2020,[3] a search is appropriate for the names of five individuals who were identified in the parties' Rule 26 initial disclosures – Melanie Arboleda, Thanisa Perez, Svetlana Lukymchuk, Dalia Elward and Elena Lutskaya. See Joint Motion at 4-5. First, plaintiffs argue that the search terms are relevant because there is evidence that four of those individuals "were aware of and discussed inappropriate sexual conduct in the office" by defendant Vainer. See id. at 4. Second, plaintiffs assert that the terms are relevant because while each of the five individuals performed work for the Niyazov law firm, defendants contend that only Melanie Arboleda was employed by them during the relevant time period. See id. at 4-5.

This Court agrees with plaintiffs that the search terms may uncover communications relevant to plaintiffs' allegations of a joint employer relationship under Title VII. First, emails relating to Ms. Arboleda may be relevant to the issues in the case because she was

---

[3] Except for the first search, which is limited to 18 key dates, the remaining disputed searches concern emails from April 4, 2019 to February 14, 2020. See 10/4/21 Motion at 2, 3; Joint Motion at 5, 7.

plaintiffs' direct supervisor. See 10/12/21 Minute Entry. Moreover, the Niyazov defendants do not dispute that four of these individuals discussed inappropriate sexual conduct in the office by defendant Vainer. Plaintiffs are not required to demonstrate that those individuals communicated over email to justify the search for relevant ESI. See Thomas, 336 F.R.D. at 5 (rejecting argument that group chat and text messages would not have relevant information based on client's representation as to how communications occurred).

The Niyazov defendants argue that a review of all emails that mention these individuals' names would be "grossly burdensome." See Joint Motion at 5. For example, defendant Niyazov "communicated via email with his legal assistant, Melanie Arboleda, numerous times per day." Id. at 5. However, rather than establishing undue burden, the frequent exchange of emails between defendant Niyazov and Ms. Arboleda supports plaintiffs' relevance argument, since plaintiffs allege that they, like Ms. Arboleda, whom the Niyazov defendants characterize as the firm's employee, worked for the firm as legal assistants; therefore, communications with or relating to Ms. Arboleda are likely to provide a useful comparison with plaintiffs' role in the firm. Again, the Niyazov defendants' cries of undue burden are purely speculative, in that they do not appear to have performed a search to generate a "hit report" that reflects the number of emails that would have to be reviewed or subjected to predictive coding. That said, in order to reduce the chance of unresponsive "hits," the Niyazov defendants need not conduct a search for Ms. Arboleda's name in conducting the keyword search of her email account.

10

C. Search No. 3

Plaintiffs request that the Niyazov defendants run a search for the name of defendant Vainer in the accounts of the designated custodians other than Vainer for the period from April 4, 2019 through February 14, 2020. See Joint Motion at 5-6. Plaintiffs argue that Vainer's name is relevant to the employment relationship between plaintiffs and the Niyazov defendants, as well as between Vainer and the Niyazov defendants, and that those employment relationships are prerequisites to the Niyazov defendants' liability for the allegedly harassing conduct by Vainer. See id. Indeed, the Niyazov defendants' Fifth Affirmative Defense asserts that: "Neither the Plaintiffs nor the Defendant Gary Vainer were employees of these answering Defendants as that term is defined in Title VII . . . . Thus, these Answering defendants cannot be liable for an act committed by a non-employee against other non-employees." Answer (Oct. 15, 2021) at 17, DE #49. In addition, Mr. Vainer is a party defendant and is alleged to have sexually harassed plaintiffs. Hence, plaintiffs have made a *prima facie* showing of the relevance of ESI containing defendant Vainer's name. In contrast, the Niyazov defendants' generalized objections of burden are insufficient to justify denying the demanded discovery.

D. Search No. 4

The Niyazov defendants object to searching for the terms "dollar" or "$" in conjunction with plaintiffs' names or with the words "legal assistant" or "assistant" or "paralegal" or "secretary." See Joint Motion at 6. Plaintiffs argue that the proposed search terms are relevant to "compensation/overtime" and "[p]laintiff's employment status." See id.

11

Although the parties have recently resolved plaintiffs' wage and hour claims, emails containing the terms "dollar" or "$" may still be relevant to plaintiffs' employment status for purposes of their Title VII claim.  Nevertheless, the Court modifies plaintiffs' proposed search to the extent that the Niyazov defendants need search only for the terms "dollar" and "$," in conjunction with plaintiffs' names, and not with the additional terms "legal assistant" or "assistant" or "paralegal" or "secretary."  Such a limitation is proportional to the discovery needs in this case.

      E.   <u>Search No. 5</u>

Plaintiffs seek a search of emails with the terms: "phone," "scan," "shred," "file," "IME," "arbitration," "insurance," "medical," "office," in addition to plaintiffs' names or the terms "legal assistant," "assistant," "paralegal" or "secretary."  <u>See</u> Joint Motion at 6-7. Plaintiffs argue that these search terms are relevant to establishing plaintiffs' employment status.  However, similar to its analysis with respect to Search No. 4, this Court concludes that plaintiffs' proposed terms are not proportional to the discovery needs in this case. Although the Court has already directed the Niyazov defendants to produce a list of all the emails in plaintiffs' email box, <u>see</u> 10/12/21 Minute Entry, the Court has stopped short of directing defendant to cull every email in which plaintiffs' names appear during the relevant time period, apart from those transmitted on 18 key dates.  The broad terms as proposed by plaintiffs are not proportional to plaintiffs' need to search for information regarding plaintiffs' employment relationship with the Niyazov defendants.

F.  Search No. 6

Plaintiffs propose using the search terms "AGA" or "Bay Queens" for emails from April 4, 2019 through February 14, 2020.  See Joint Motion at 7.  The Niyazov defendants again claim that these terms are not relevant to plaintiffs' claims of sexual harassment or their employment status.  See id.  Further, the Niyazov defendants argue that it would be unduly burdensome to review all emails with the term "AGA."  See id.

The ESI sought by plaintiffs from the designated custodians is relevant to plaintiffs' theory that the defendants, including defendants AGA Legal Staffing Inc. and Bay Queens Management, Inc., were their joint employers for purposes of liability for sexual harassment, and to the Niyazov defendants' Fifth Affirmative Defense that neither defendant Vainer nor plaintiffs were employees of the Niyazov defendants.  The Niyazov defendants, for their part, have made no showing that a search for such emails would require an unduly burdensome review for relevant information.  Absent any evidence as to the volume of emails that include the subject terms during the relevant period, the Niyazov defendants' objections are insufficient when weighed against the relevance of the information.

**III.  Format of Production**

Plaintiffs have requested that responsive emails be produced in accordance with their ESI production format specifications,[4] including that emails be produced with certain metadata.[5]  See Joint Motion at 2 & Ex. 1 thereto (DE #51-1).  The Niyazov defendants have

---

[4] It is not clear from the parties' submissions whether plaintiffs requested metadata in their original document requests.

[5] "Metadata, frequently referred to as 'data about data,' is electronically-stored evidence that describes the

13

countered by offering to produce emails either in hard copy or in PDF format, at plaintiffs' election. See Joint Motion at 3.

Under Rule 34, a party must produce ESI "as [it is] kept in the usual course of business[,] . . . in a form . . . in which it is ordinarily maintained or in a reasonably usable form[.]" Fed. R. Civ. P. 34(b)(2)(E). Although Rule 34 allows the requesting party to indicate a preferred form for production of ESI, "[t]he responding party is not required to accede to the requesting party's specification of form." 8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2219 (3d ed. 2021); see N. Crossarm Co. Inc. v. Chem. Specialties, Inc., No. 03–C–415–C, 2004 WL 635606, at *1 (W.D. Wis. Mar. 3, 2004) ("neither the letter nor the spirit of Rule 34 mandates that a party is *entitled* to production in its preferred format"). Nevertheless, if ESI is kept in an electronically-searchable form, it "should not be produced in a form that removes or significantly degrades this feature." Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment; see *In re* Payment Card Intercharge Fee & Merch. Disc. Antitrust Litig., No. MD 05-1720(JG)(JO), 2007 WL 121426, at *4 (E.D.N.Y. Jan. 12, 2007) (documents stripped of searchable metadata do not comply with Rule 34(b)). "ESI should not be produced in a format that makes it unreasonably difficult or burdensome for the requesting party to use the documents efficiently in the litigation." Nichols v. Noom Inc., 20-CV-3677 (LGS) (KHP), 2021 WL 948646, at *3 (S.D.N.Y. Mar. 11, 2021) (citing The Sedona Conference, The Sedona Principles, Third

---

'history, tracking, or management of an electronic document.'" Aguilar v. Immigr. & Customs Enf't Div. of U.S. Dep't of Homeland Sec., 255 F.R.D. 350, 354 (S.D.N.Y. 2008) (quoting Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 647 (D. Kan. 2005)).

14

Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production, Principle 12, 19 Sedona Conf. J. 1, 173 (2018)).

To be sure, "[c]ourts in the Second Circuit have denied requests for metadata, even where the metadata itself might have some probative value, where that potential value is 'outweighed by the cost and burden of production.'" *In re* Keurig Green Mountain Single-Serve Coffee Antitrust Litig., CIVIL ACTION NO. 14 MD 2542 (VSB) (SLC), 2020 WL 1940557, at *2 (S.D.N.Y. Apr. 22, 2020) (collecting cases). Here, the balancing of those competing interests has been hindered by the failure of the parties to provide the Court with information regarding the format in which the Niyazov defendants' emails for the relevant time period are kept. Nor have plaintiffs demonstrated the relevance of any particular metadata from the emails to be produced by the Niyazov defendants. See Alter, 2014 WL 4966119, at *6 ("Plaintiff's counsel has provided no factual support from which to draw an inference that the metadata at issue will hold relevant evidence."); 246 Sears Rd. Realty Corp. v. Exxon Mobil Corp., 09-CV-889 (NGG) (JMA), 2011 WL 13254283, at *3 (E.D.N.Y. Apr. 1, 2011) ("the native format documents and metadata sought by plaintiff are of minimal, if any, value to resolving the existing issues in this litigation"); Aguilar, 255 F.R.D. at 360 ("no showing that any additional file folder information [in email metadata] would be of real value"); see also Wiley v. Paulson, No. 06-CV-172 (DGT)(RER), 2007 WL 7059722, at *2-3 (E.D.N.Y. Sept. 26, 2007) (finding that plaintiffs' speculative theory as to who drafted relevant emails did not show good cause to compel production of metadata). This is not a case where the parties'

15

claims or defenses have placed in issue where or when a particular email was sent or was opened or forwarded from a particular account, nor have plaintiffs raised issues implicating the metadata associated with a particular account or computer. Importantly, there is no claim here that sexually harassing conduct occurred over email. "Parties should not demand forms of production . . . for which they have no practical use or that do not materially aid in the discovery process." Nichols, 2021 WL 948646, at *4 (quoting The Sedona Principles, Third Edition, 19 Sedona Conf. J. at 173).

On the other hand, since counsel has represented that the Niyazov defendants themselves were planning to undertake the keyword search for responsive emails, it appears that the Niyazov defendants maintain emails in an electronically searchable format. Although the Niyazov defendants must not "remove[] or significantly degrade[]" the searchability of ESI that will be produced, see Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment, they are not required to produce ESI in the format specified by plaintiffs. Thus, the Niyazov defendants need not produce metadata, but must produce responsive emails in a text-searchable format. See Black Love Resists, 334 F.R.D. at 30 ("Defendants must preserve the searchability of ESI records by producing data in a text-searchable format[.]"); Aguilar, 255 F.R.D. at 361 (production of ESI in text-searchable PDFs, rather than with system metadata, found to be sufficient); Zakre v. Norddeutsche Landesbank Girozentrale, No. 03 Civ. 0257(RWS), 2004 WL 764895, at *1 (S.D.N.Y. Apr. 9, 2004) (production of emails in text-searchable format is sufficient because they were produced "in as close a form as possible as they are kept in the usual course of business"). If the Niyazov defendants produce

emails in the form in which they were kept, the Court expects that plaintiffs will receive the associated metadata as well, as it is typically embedded in the electronic files themselves. Alternatively, the Niyazov defendants are permitted to convert their electronic documents to searchable TIFF or PDF images. The parties are directed to confer on the mechanics of such a production, including the export functionality of the email application used by the Niyazov defendants to collect and deliver the email files at issue.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel is granted in substantial part, to the extent discussed above.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**November 12, 2021**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**